## Swabb v. Erie Board of Education

*George Levin,* for plaintiff and additional defendant.

*John Beatty,* for defendant.

PFADT, *J.,* October 20, 1980—In the spring and summer of 1979 the Board of Education of the

School District of the City of Erie and the Erie Area Vocational-Technical School chose to suspend a number of their professional employes. The suspended employes have filed actions under the provisions of 2 Pa.C.S.A §101 et seq., and the case is before this court on appeal. The suspended employes allege that their suspensions were in violation of the Public School Code of March 10, 1949, P.L. 30, as amended, specifically 24 P.S. §§5-524 and 11-1124. Appellants are requesting reinstatement and back pay as a remedy for their allegedly wrongful suspensions.

Procedurally, this case is before the court in an unusual posture. The school board did not conduct local agency hearings and render a decision from which an appeal could be taken. The parties stipulated that testimony would be taken before a hearing master and presented to the court for de novo review. In addition, the parties have stipulated that the testimony and documents submitted to the court in a prior equity action arising from the restructuring of the Erie Vocational-Technical School, Tronetti v. Board of Education, 63 Erie 1 (1979), shall be incorporated into the record of the present case. This procedure is, of course, very cumbersome and deprives the court of the opportunity to evaluate the credibility of the witnesses. The court has chosen, however, to decide the case on this basis in order to expedite the resolution of this matter.

Before reaching the merits of this case, it must be determined where the burden of proof lies. The school board contends that the appellants are essentially in the same position as a plaintiff in a civil action and should accordingly carry the burden of proof. There is little case law to provide guidance on

this issue. The Commonwealth Court has stated, however, in discussing the suspension of a professional employe under 24 P.S. §11-1124(2), that "[a] *school board must establish by substantial evidence* that the alteration or curtailment of the educational program which results in the suspension of a professional employe is motivated solely by a desire to provide a more efficient and effective school program." Sporie v. Eastern Westmoreland Area Vo-Tech School, 47 Pa. Commonwealth Ct. 390, 396, 408 A. 2d 888, 892 (1979). (Emphasis supplied.) On the basis of this statement, and of the consideration that it is the school board which has greater access to the information relevant to the suspension of a professional employe, the court allocates to the school board the burden of proving that the suspensions in question were not violative of the Public School Code.

In this case, the court finds that the school board has successfully carried its burden of proof.

Section 1124 of the Public School Code, 24 P.S. §11-1124 sets forth the reasons for which a professional employe may be suspended:

"Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

"(1) Substantial decrease in pupil enrollment in the school district;

"(2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law

or recommended by the Department of Public Instruction;

"(3) Consolidation of schools, whether within a single district, through a merger of districts, or as a result of joint board agreements, when such consolidation makes it unnecessary to retain the full staff of professional employes.

"(4) When new school districts are established as the result of reorganization of school districts pursuant to Article II., subdivision (1) of this act, and when such reorganization makes it unnecessary to retain the full staff of professional employes."

The school board contends that a substantial decline in enrollment justifies the suspensions at issue here. It cannot plausibly be argued that there was not a substantial decline in enrollemnt and the court does not understand appellants to be seriously contesting this fact. It is, instead, the position of the appellants that although there was a substantial decline in enrollment, the school board violated section 11-1124 by relying heavily upon budgetary considerations in determining whether to suspend the appellants. In support of their argument, the appellants cite, e.g., Theros v. Warwick Board of Sch. Dir., 42 Pa. Commonwealth Ct. 296, 401 A. 2d 575 (1979), wherein it was held that budgetary considerations *alone* do not justify the suspension of a professional employe.

The position of appellants must be rejected. A school board need not wear blinders in its deliberations. Budgetary considerations are permissible factors in the decisional process so long as a school board is actually faced with a substantial decline in enrollment. As stated by the Commonwealth Court: "It is not improper for the school authorities

to have taken into consideration or, indeed, to have been motivated by, considerations of economy as long as the grounds established by the Code are present." Bednar v. Butler Area School District, 48 Pa. Commonwealth Ct. 586, 410 A. 2d 922 (1980). See also, Platka v. Laurel Highlands Sch. Dist., 49 Pa. Commonwealth Ct. 210, 410 A. 2d 960 (1980); Sporie v. Eastern Westmoreland Area Vo-Tech School, supra.

In this case, there is no question that the school district had suffered a substantial decline in enrollment. This factor distinguishes the present case from Theros, supra, where budget was the only reason for the suspension. Having found that there was a substantial decline in enrollment, the subjective motivations of the members of the school board are not controlling and need not be examined by the court. It follows that the school board did not violate section 11-1124 in making the suspensions at issue here.

With respect to those employes suspended when the Columbus School was closed, there is a claim that the school board violated section 524 of the Public School Code, 24 P.S. § 5-524:

"The board of school directors of any school district, including merged or union districts, and any boards of school directors establishing any joint school or department, shall not close any school or department during the school term, unless such action shall advance the orderly development of attendance areas within an approved administrative unit and has been approved by the Department of Public Instruction. In the event a school board shall determine prior to the beginning of the next school term to close any school or department, sixty (60) days notice, in writing, prior to the closing of any

school or department, shall be given to all temporary professional and professional employes affected thereby, unless such action shall advance the orderly development of attendance areas within an approved administrative unit and has been approved by the Department of Public Instruction. Upon failure to give written notice of intention to close any school or department, the school district shall pay such employes their salaries until the end of the school year during which such schools or departments were closed.

"Temporary professional or professional employes, whose positions are abolished as a result of the action of the board of school directors in closing a school or department, or reassigning pupils in its effort to consummate partially or wholly the orderly development of approved administrative and attendance areas, may not be suspended until the end of the school year if such action is taken during the school year or later than sixty (60) days prior to the opening of the next school term.

"The payment of salary to any temporary professional or professional employe shall be discontinued immediately, if such employe obtains other employment which, in the judgment of the board of school directors, could not have been obtained or held if such school or department had not been closed: Provided, however, That if the salary in the new position is less than the salary the professional employe would have received had he remained in the employment of the school district, the school district shall be liable for the difference."

This claim may be dismissed summarily. The school board sent a letter to the affected employes on June 25, 1979, and there is no claim that the letter was not actually received by any of the af-

fected employes. The board having given 60 days' notice in writing, there is no need for approval of the Department of Public Instruction. Thus, the school board did not violate section 5-524.

Finally, there remains to be considered the claims of those employes suspended when the Erie Vocational-Technical School was restructured. The parties have raised a plethora of issues pertaining to this group of teachers. The court, however, finds it unnecessary to reach the majority of these issues.

It was concluded above that the evidence clearly establishes a substantial decline in pupil enrollment throughout the school district, thus justifying the suspension of professional employes under section 11-1124 of the Public School Code, quoted above. Appellants attempt to avoid the force of this finding by a counter-argument that the Vocational-Technical School is a separate school district distinct from the School District of the City of Erie, and that for the purpose of determining the propriety of suspensions, the enrollment of the Vocational-Technical School alone is controlling. Neither factually nor legally is this argument convincing. If any one fact is clear from the evidence in this case, it is that the Vocational-Technical School was an integral part of the functioning of the entire school district. Nor can the appellants cite to anything in the provisions of the Public School Code governing vocational-technical schools, 24 P.S. § 18-1801 et seq., which mandates that a vocational-technical school must function independently of the school district(s) in its attendance area. Indeed, by providing that the school board of a vocational-technical school shall consist of the board of directors of the participating school districts, 24 P.S. § 18-1850.1, the legislature has indicated a desire for close rela-

tionships between vocational-technical schools and their constituent school districts. It is, therefore, the conclusion of the court that the suspensions of employes of the Vocational-Technical School are justified by declining enrollment in the district as a whole.

Finally, appellants argue that the conversion of the Vocational-Technical School from two three-day sessions per week to one five-day session per week was the closing of a school or department, thus requiring compliance with section 5-524, quoted above. The court believes that the action taken by the school board was not a closing of a school or department but merely a rescheduling of the attendance patterns within a school. Section 5-524 is inapplicable to this situation.

For the foregoing reasons, the appeals of the suspended employes must be dismissed.

### ORDER

And now, October 20, 1980, it is hereby ordered and decreed that the appeals in the above-captioned case be and the same are hereby dismissed.